**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

IN RE PRESS COALITION'S MOTION
FOR ACCESS TO COMMUNITY
SERVICE RECORDS

Case No.

Case: 1:21-mc-00166
Assigned To : Walton, Reggie B.
Assign. Date : 12/21/2021
Description: Misc.

---

## MOTION FOR ACCESS TO COMMUNITY SERVICE RECORDS

Pursuant to Local Criminal Rule 57.6, Cable News Network, Inc., American

Broadcasting Companies, Inc. d/b/a ABC News, The Associated Press, CBS Broadcasting Inc.

o/b/o CBS News, Dow Jones & Company, Inc., publisher of The Wall Street Journal, The E.W.

Scripps Company, Gannett Co., Inc., Gray Media Group, Inc., Los Angeles Times

Communications LLC, publisher of The Los Angeles Times, National Public Radio, Inc.,

NBCUniversal Media, LLC d/b/a NBC News, The New York Times Company, Pro Publica,

Inc., Tegna, Inc., and WP Company LLC, d/b/a the Washington Post (together, the "Press

Coalition") respectfully move for an order releasing certain post-conviction records submitted to

this Court in *United States v. Vinson*, Case No. 21-cr-355-RBW, regarding Defendants Lori and

Thomas Vinson.  Specifically, the Press Coalition seeks the release of records reflecting how

Defendants have completed the 120 hours of community service that the Court ordered them

each to perform as a condition of their probation (the "Community Service Records").  The Press

Coalition's interest in this matter, a statement of the relevant facts, and a specific prayer for relief

are each set forth in the accompanying Memorandum of Points and Authorities.

### REQUEST FOR HEARING

The Press Coalition respectfully requests a hearing on this Motion.

Dated:  December 21, 2021       Respectfully submitted,

                                BALLARD SPAHR LLP

                                /s/ *Charles D. Tobin*
                                Charles D. Tobin (#455593)
                                Maxwell S. Mishkin (#1031356)
                                Lauren Russell (#1697195)
                                1909 K Street, NW, 12th Floor
                                Washington, DC 20006
                                Telephone: (202) 661-2200
                                Fax: (202) 661-2299
                                tobinc@ballardspahr.com
                                mishkinm@ballardspahr.com
                                russelll@ballardspahr.com

                                *Counsel for the Press Coalition*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

IN RE PRESS COALITION'S MOTION
FOR ACCESS TO COMMUNITY
SERVICE RECORDS

Case No.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE PRESS
COALITION'S MOTION FOR ACCESS TO COMMUNITY SERVICE RECORDS**

BALLARD SPAHR LLP

Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Lauren Russell (#1697195)
1909 K Street NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
russelll@ballarspahr.com

*Counsel for the Press Coalition*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ................................................................................................................ 2

I.      The Capitol Riot ................................................................................................... 2

II.     Defendants Lori and Thomas Vinson ................................................................... 3

III.    The Sentencing Hearing ....................................................................................... 4

ARGUMENT ...................................................................................................................... 5

I.      The Community Service Records Are Judicial Records Subject
       To The Common Law Right Of Access ................................................................ 5

II.     The Hubbard Factors Support Public Access To The
       Community Service Records ................................................................................. 7

CONCLUSION ................................................................................................................. 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Johnson v. Greater Southeast Community Hospital Corp.*,
    951 F.2d 1268 (D.C. Cir. 1991) ..................................................................................8

*Leopold v. United States*,
    964 F.3d 1121 (D.C. Cir. 2020) ...................................................................................7

*Metlife, Inc. v. Financial Stability Oversight Council*,
    865 F.3d 661 (D.C. Cir. 2017) ....................................................................................5

*In re Nichter*,
    949 F. Supp. 2d 205 (D.D.C. 2013) ..................................................................... *passim*

*United States v. Hubbard*,
    650 F.2d 293 (D.C. Cir. 1980) ....................................................................................5

*United States v. Munchel*,
    2021 U.S. Dist. LEXIS 194604 (D.D.C. Oct. 8, 2021).................................8, 10, 11

*United States v. Munchel*,
    991 F.3d 1273 (D.C. Cir. 2021) ...............................................................................1, 9

*Vanda Pharm., Inc. v. FDA*,
    --- F. Supp. 3d ---, 2021 U.S. Dist. LEXIS 86682 (D.D.C. May 6, 2021)................9

*Washington Legal Foundation v. U.S. Sentencing Commission*,
    17 F.3d 1446 (D.C. Cir. 1994) ....................................................................................6

**Statutes**

18 U.S.C. § 3563 ................................................................................................................6

18 U.S.C. § 3564 ................................................................................................................6

18 U.S.C. § 3565 ................................................................................................................6

18 U.S.C. § 3601 ................................................................................................................6

18 U.S.C. § 3602 ................................................................................................................6

18 U.S.C. § 3603 .......................................................................................................4, 6, 11

## PRELIMINARY STATEMENT

The public interest in this case did not end when the Court sentenced Defendants Lori and Thomas Vinson for their roles in the assault on the nation's Capitol. Indeed, given the "grave danger to our democracy," the public interest in transparency remains through every phase as the Court administers justice to those complicit in "the violent breach of the Capitol on January 6." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021).

To ensure maximum transparency in this historically important prosecution, Cable News Network, Inc., American Broadcasting Companies, Inc. d/b/a ABC News, The Associated Press, CBS Broadcasting Inc. o/b/o CBS News, Dow Jones & Company, Inc., publisher of The Wall Street Journal, The E.W. Scripps Company, Gannett Co., Inc., Gray Media Group, Inc., Los Angeles Times Communications LLC, publisher of The Los Angeles Times, National Public Radio, Inc., NBCUniversal Media, LLC d/b/a NBC News, The New York Times Company, Pro Publica, Inc., Tegna, Inc., and WP Company LLC, d/b/a The Washington Post (together, the "Press Coalition") now seek access to certain post-conviction records submitted to this Court regarding Lori and Thomas Vinson, the defendants in *United States v. Vinson*, No. 21-cr-355-RBW. Specifically, the Press Coalition seeks the release of records reflecting where, how, and if Defendants have completed the 120 hours of community service that the Court ordered them each to perform as a condition of probation. These records (the "Community Service Records") are judicial records subject to a presumption of access under the common law, and there are no countervailing interests here to rebut that strong presumption.[1]

---

[1] The Press Coalition has also moved for access to the community service records of Capitol riot defendant Anna Morgan-Lloyd. *In re Mot. for Access to Cmty. Serv. Records*, No. 21-mc-155-RCL. The Court has ordered the Probation Office to provide the records for *in camera* review, and the Government has stated that it "takes no position" on the access motion. *United States v. Morgan-Lloyd*, No. 21-cr-164-RCL, Dkt. 31 (Dec. 20, 2021 Order), Dkt. 32 (Gov't's Resp.).

The need for contemporaneous, comprehensive access to these Community Service

Records is especially great here, for two reasons: (1) there is an ongoing public debate as to

whether probation is a just and fair response to the events of January 6, and; (2) Defendant Lori

Vinson initially said she felt she "had done nothing wrong" and that she "wouldn't change it"

shortly after the Capitol riot. *See* Statement of Facts at 4, Dkt. 1-1; *see also* Jill Lyman & Tanner

Holbrook, *Union Co. couple released on bond after being arrested in connection to Capitol riot*,

14 News WFIE (Feb. 24, 2021), https://www.14news.com/2021/02/23/union-co-nurse-fired-

after-capitol-riot-arrested-by-fbi/.  As such, publicizing Defendants' compliance with their

Court-ordered community service, including where, how, and if they have completed it, would

help the public evaluate the genuineness of the remorse Defendants expressed to this Court in the

course of their sentencing.  *See* Thomas Vinson's Sentencing Mem. at 2, Dkt. 46; Ex. D. to Def.

Lori Vinson's Sentencing Mem. at 1-2, Dkt. 47-4.

This question—whether those who took part in the unprecedented events of January 6

have backed up their contrite words with action—is of the utmost public importance.  The Court

should therefore recognize the common law right of access to these Community Service Records

and immediately make them available to the public.

## BACKGROUND

### I.     The Capitol Riot

On January 6, 2021, thousands of rioters stormed the United States Capitol in a "blatant

and appalling disregard for our institutions of government and the orderly administration of the

democratic process."  *See Director Wray's Statement on Violent Activity at the U.S. Capitol*

*Building*, FBI (Jan. 7, 2021), https://www.fbi.gov/news/pressrel/press-releases/director-wrays-

statement-on-violent-activity-at-the-us-capitol-building-010721.  In response, federal law

enforcement agencies "deployed [their] full investigative resources . . . to aggressively pursue those involved in criminal activity." *Id.* The Department of Justice has since charged nearly 700 defendants, including Defendants here, with crimes committed during the Capitol riot. *See, e.g.*, *Capitol Breach Cases*, Dep't of Justice, https://www.justice.gov/usao-dc/capitol-breach-cases.

## II.    Defendants Lori and Thomas Vinson

On February 22, 2021, the Government charged Lori and Thomas Vinson with four counts, including knowingly entering the U.S. Capitol and engaging in disorderly conduct therein. *See* Crim. Compl., Dkt. 1. On July 27, 2021, both Defendants agreed to plead guilty to one count of "Parading, Demonstrating, or Picketing in a Capitol Building" in violation of 40 U.S.C. § 5104(e)(2)(G). Plea Agreement at 1, Dkt. 28 (Thomas Vinson); Plea Agreement at 1, Dkt. 30 (Lori Vinson).

The Government filed its sentencing memoranda on October 13, 2021. It remarked, as to both Defendants, that the "attack on the U.S. Capitol, on January 6, 2021" was "a criminal offense unparalleled in American history." Gov't's Sentencing Mem. at 15, Dkt. 43 (Lori Vinson); Gov't's Sentencing Mem. at 14, Dkt. 44 (Thomas Vinson). It then requested that Thomas Vinson be sentenced to "60 hours of community service." Dkt. 44 at 1. This recommendation came, in part, because Thomas Vinson demonstrated "early acceptance of responsibility." *Id.* at 21. With regard to Lori Vinson, however, the Government recommended "30 days' incarceration" because her "statements after the fact" were "of such an egregious nature as to merit a different kind of sentence" than her husband. Dkt. 43 at 22.

In their sentencing memoranda filed six days later, on October 19, 2021, both Defendants asserted that community service was justified. Thomas Vinson did not suggest a specific length of service, remarking only that community service was "appropriate." Dkt. 46 at 17 n.13. Lori

Vinson requested a sentence including "100 hours of community service."  Dkt. 47 at 1.  Both

Defendants expressed contrition for their actions.  *See* Dkt. 46 at 2; Dkt. 47-4 at 1-2.

## III.    The Sentencing Hearing

On October 22, 2021, this Court sentenced both Defendants to "[s]ixty (60) months (5

years) probation."  Judgement at 2, Dkt. 55 (Lori Vinson); Judgement at 2, Dkt. 57 (Thomas

Vinson).  The terms of probation, for both Defendants, included a $500 restitution obligation, a

$5,000 fine, and "120 hours of community service" to be completed "within 36 months."  Dkt.

55 at 4; Dkt. 57 at 4.  The Court observed at the sentencing hearing that "[w]e are so divided as a

country that we are killing ourselves as a country."[2]

This understandable frustration about the events of January 6, in conjunction with the

important role that sentencing plays as a response to those events, warrants a full public

accounting of Defendants' court-ordered community service.  This includes how, where, and if

they have performed it.  These details are indispensable to both a public evaluation of

Defendants' sincerity and a public assessment of whether probation, as a general matter, is a just

and fair response to the Capitol riot.  No matter its conclusions, the public has a right to know.

Federal law requires officers of the U.S. Probation and Pretrial Services System to remain

informed about how probationers are complying with the conditions of their probation, and to

"report [that] conduct and condition to the sentencing court."  18 U.S.C. § 3603(2).  The Press

Coalition brings this motion for access to the Community Service Records – that is, any reports

that Probation and Pretrial Services has or is required to provide to this Court about the

---

[2] Michael Kunzelman, *Kentuckians get probation in connection with Capitol riots*, Associated
Press (Oct. 22, 2021), https://apnews.com/article/donald-trump-capitol-siege-kentucky-reggie-
walton-7b7f97bcd174b90969bba7ca2c2c7b1c.

Defendants' compliance with this condition of their probation – to shed light on this vital but hidden aspect of the judicial process.

## ARGUMENT

The Community Service Records to be provided to the Court are subject to the common law right of access.  In this Circuit, courts conduct a two-step analysis to assess a common law right of access motion.  First, courts determine whether the records at issue are "judicial records" to which there is a "strong presumption" in favor of access.  *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665-67 (D.C. Cir. 2017) (Garland, J.).  If they are judicial records, courts apply the six-factor test set out in *United States v. Hubbard* to conclude whether the presumption of access is rebutted.  650 F.2d 293 (D.C. Cir. 1980).  Here, the Community Service Records—which are directly connected to an unprecedented episode in American history—are judicial records, and the *Hubbard* factors weigh in favor of access.

**I.      The Community Service Records Are Judicial Records Subject To The Common Law Right Of Access**

The Community Service Records are subject to the common law right of access because they are judicial records that have a role to play in judicial decision-making.  Federal probation originated with the Probation Act of 1925, which "gave the courts the power to suspend the imposition or execution of sentence and place defendants on probation for such period and on such terms and conditions as they deemed best."  *See* Administrative Office of the United States Courts, *Probation and Pretrial Services History*, https://www.uscourts.gov/services-forms/probation-and-pretrial-services/probation-and-pretrial-services-history.  Today, federal probation falls directly under the auspices of the judiciary: the Judicial Conference of the United States administers U.S. Probation and Pretrial Services, and federal law grants courts broad discretion over the probation process.  *See, e.g.*, *Overview of Probation and Supervised Release Conditions*,

Admin. Office of the U.S. Courts Probation and Pretrial Services Office (Nov. 2016),

https://www.uscourts.gov/sites/default/files/overview_of_probation_and_supervised_release_con

ditions_0.pdf, at 5 n.8.

Specifically, federal law provides that courts may provide discretionary conditions of

probation, *see* 18 U.S.C. § 3563(b)(1)-(23); courts may "modify, reduce, or enlarge the

conditions of a sentence of probation," *see id.* § 3563(c); courts may "terminate a term of

probation previously ordered and discharge the defendant at any time in the case of a

misdemeanor . . . if it is satisfied that such action is warranted by the conduct of the defendant

and the interest of justice," *see id.* § 3564(c); courts may "extend a term of probation, if less than

the maximum authorized term was previously imposed," *see id.* § 3564(d); and courts may

continue or revoke probation after a hearing "[i]f the defendant violates a condition of probation

at any time prior to [its] expiration or termination," *see id.* § 3565(a)(1)-(2).

Federal law further requires that a "person who has been sentenced to probation . . . be

supervised by a probation officer to the degree warranted by the conditions specified by the

sentencing court." *Id.* § 3601.  The court is charged with appointing probation officers and the

"order of appointment shall be entered on the records of the court." *Id.* § 3602(a)-(b).  The

probation officer must then "keep informed, to the degree required by the conditions specified by

the sentencing court, as to the conduct and condition of a probationer" and must "report [that]

conduct and condition to the sentencing court." *Id.* § 3603(2).  Finally, a probation officer must

"perform any other duty that the court may designate." *Id.* § 3603(10).

Given this statutory framework, it is no surprise that the D.C. Circuit has characterized

the Probation Service as an "entity in the judicial branch." *Washington Legal Found. v. U.S.

Sentencing Comm'n*, 17 F.3d 1446, 1449 (D.C. Cir. 1994).  And though the D.C. Circuit has not

yet addressed whether probation records submitted *after* sentencing are judicial records, in *In re Nichter* then-Chief Judge Royce C. Lamberth concluded that Presentence Investigative Reports ("PSRs"), which "aid the sentencing court in carrying out its function" before a sentence is delivered, are subject to the right of access. 949 F. Supp. 2d 205, 208 (D.D.C. 2013). Acknowledging that PSRs are "presumptively confidential," the court nevertheless stated that "PSRs are court documents, and the district court may release them at its discretion," *id*., and the court ultimately released the PSRs due to the "compelling public interest" in them, *id*. at 210.

Reports that probation officers submit to the court pursuant to 18 U.S.C. § 3603(2) relating to the "conduct and condition" of a probationer are, like PSRs, judicial records that aid this Court in "carrying out its function." *See Nichter*, 949 F. Supp. 2d at 208. Specifically, such reports will inform the Court's decision whether to modify, reduce, or enlarge probation conditions under 18 U.S.C. § 3563(c); whether to terminate probation under 18 U.S.C. § 3564(c); whether to extend probation under 18 U.S.C. § 3564(d); or whether to continue or revoke probation after a hearing if the probationer "violates a condition of probation prior to [its] expiration or termination" under 18 U.S.C. § 3565(a)(1)-(2). Reports on the "conduct and condition" of a probationer thus have a significant "role [to] play[] in the adjudicatory process." *Leopold v. United States*, 964 F.3d 1121, 1128 (D.C. Cir. 2020) (Garland J.) (internal marks omitted). Probation records furnished to the Court under 18 U.S.C. § 3603(2) are therefore judicial records to which the public has a "strong presumption" of access under the common law.

## II.     The *Hubbard* Factors Support Public Access To The Community Service Records

Because the public has a presumptive right of access to the Community Service Records, the Court should release them unless the Government can rebut that presumption through the six-

factor *Hubbard* test.  *See, e.g.*, *United States v. Munchel*, 2021 U.S. Dist. LEXIS 194604, at *7

(D.D.C. Oct. 8, 2021). Those factors are:

> (1) the need for public access to the documents at issue; (2) the
> extent of previous public access to the documents; (3) the fact that
> someone has objected to disclosure, and the identity of that person;
> (4) the strength of any property and privacy interests asserted;
> (5) the possibility of prejudice to those opposing disclosure; and
> (6) the purposes for which the documents were introduced during
> the judicial proceedings.

*Id.* at *7-8 (quoting *Leopold*, 964 F.3d at 1131).  The party objecting to release bears the burden

of demonstrating that the *Hubbard* factors rebut the strong presumption in favor of public access

to judicial records.  *See Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1278 (D.C.

Cir. 1991) (the party opposing access must "come forward with specific reasons why the record,

or any part thereof, should remain under seal").

Here, no party opposing release could rebut the strong presumption of access to these

records under the *Hubbard* test.  To the contrary, the *Hubbard* factors roundly support granting

this motion and releasing the records at issue.

**Factor 1: The Need for Public Access.**  The public has a compelling need for access to

the Defendants' Community Service Records in this case.  As the court recognized in *Nichter*,

which concerned a motion to unseal PSRs from the prosecution of G. Gordon Liddy and others

connected to the Watergate scandal, providing access to records "publicizing actions that

threatened the very nature of our system of government" advances "a compelling public

interest."  949 F. Supp. 2d at 210; *see also id.* ("Our history of open trials and public

identification of defendants puts society on notice that crimes do not go unpunished and illegal

acts cannot be hidden from the community.").  Here, too, the Community Service Records

ultimately arise out of events that the D.C. Circuit has described as a "grave danger to our

8

democracy." *Munchel*, 991 F.3d at 1284.  Access to these records therefore advances the

bedrock principle that high-profile criminal activity warrants heightened public scrutiny of the

justice system.  *See Nichter*, 949 F. Supp. 2d at 210 ("In high profile public corruption cases in

particular, the publication of court records, even those that would normally remain under seal,

places politicians and their allies on notice that they will be held responsible for their actions.").

While that public interest applies in all of the cases arising out of Capitol riot, access to

the Community Service Records is particularly important in this case because the sincerity of

Defendant Lori Vinson's contrition has been called into question by her own public statements.

Whether Capitol riot probationers are "play[ing]" the court, as Chief Judge Howell has put it,[3] is

a legitimate question that access to information regarding those probationers' conduct and

condition may help to answer.  In short, the need for public access to these records is significant,

and it is not outweighed by any of the other *Hubbard* factors, whether taken individually or in

the aggregate.

**Factor 2: The Extent of Previous Public Access**.  Because there has been no previous

access to the Community Service Records, the second *Hubbard* factor is neutral.  *See, e.g.*,

*Vanda Pharm., Inc. v. FDA*, --- F. Supp. 3d ---, 2021 U.S. Dist. LEXIS 86682, at \*20 (D.D.C.

May 6, 2021) ("the second *Hubbard* factor is neutral where there has been no previous access")

(internal marks omitted).

**Factor 3: The Existence and Identity of an Objector.**  It remains to be seen whether,

having considered the Press Coalition's arguments, either the Government or Defendants will

---

[3] *See* Jordan Ficher et al., *Indiana grandmother 'played' by Fox News in Ingraham Angle interview, attorney says*, WUSA9 (Oct. 28, 2021), https://www.wusa9.com/article/news/national/capitol-riots/indiana-grandmother-anna-morgan-lloyd-played-by-fox-news-in-ingraham-angle-interview-attorney-says/65-a609c28a-0abe-406d-ad60-4daa89517ff4.

object to the disclosure of the Community Service Records.  But because Factor 3 is the only

*Hubbard* factor that could even arguably weigh against disclosure, if the Government and

Defendants both choose to object, the *Hubbard* factors will not, on balance, rebut the strong

presumption of access under the common law.  *See Munchel*, 2021 U.S. Dist. LEXIS 194604, at

*15 (noting that when "the only party to object is the defendant, courts in this district have

concluded that this factor weighs in favor of disclosure," and that "when the government is a

party to the case—and supports public access to the judicial record—this further strengthens the

case for access") (citations omitted).

      **Factor 4: The Strength of Any Asserted Privacy or Property Rights.**  Under Factor 4,

"disclosure is discouraged where there is a possibility of 'public humiliation and degradation'

that would 'constitute an unconscionable invasion of privacy' to innocent third persons."

*Munchel*, 2021 U.S. Dist. LEXIS 194604, at *16 (quoting *In re Application of NBC*, 653 F.2d

609, 620 (D.C. Cir. 1981)).  Records reflecting where, how, and if Defendants performed their

required community service hours will not give rise to such concerns.  Indeed, much of the

Defendants' personal history has been made a matter of public record in the four sentencing

memoranda filed in this case.  *See* Dkts. 43-44; 46-47.  Moreover, any legitimately private

information in the records can be redacted.  *See, e.g.*, *Nichter*, 949 F. Supp. 2d at 210 (allowing

the Government to redact "medical and psychological information of living individuals" where

"disclosure of this information would provide no benefit to the public").  Narrow redactions of

undisclosed private information, if needed, would strike a proper balance between the intense

public interest in these records and Defendants' potential privacy interests.

      **Factor 5: The Possibility of Prejudice**.  Factor 5 "addresses whether defendants' rights

in this proceeding will be prejudiced by release," *Munchel*, 2021 U.S. Dist. LEXIS 194604, at

*19, and releasing the Community Service Records cannot possibly prejudice Defendants in this proceeding.  If the Defendants fail to meet any conditions of their probation, they may face modification or revocation thereof, but that consequence would arise from the Court's own assessment of the Community Service Records, not from public access to those records.

**Factor 6: The Purpose of the Records at Issue.**  As federal law requires, probation officers report to the Court for the purpose of judicial evaluation of a probationer's conduct and condition.  *See* 18 U.S.C. § 3603(2).  Because this Court will receives this information to inform its decisions as to the probationers' status vis-à-vis the terms of their probation, and not for some improper purpose, this factor also favors disclosure.  *See, e.g.*, *Munchel*, 2021 U.S. Dist. LEXIS 194604, at *22 n.4 ("[T]he relevant question is why the documents were submitted to the Court—i.e, to influence a court decision and not for another improper purpose.").

In sum, out of the six *Hubbard* factors, four strongly favor disclosure, one is neutral, and one remains to be determined.  As the common law requires, and given the historic importance of transparency in this case, the Court should grant the Press Coalition's motion for access and release the Community Service Records immediately.[4]

**CONCLUSION**

For the foregoing reasons, the Press Coalition respectfully requests that the Court grant this motion and release the Community Service Records.

---

[4] In *Nichter*, the court did not apply the traditional *Hubbard* factors to the petition for access to PSRs, but rather required the party seeking disclosure "to show a compelling need for disclosure to meet the ends of justice that outweighs the privacy interests of the defendant and the policy interests of the court."  949 F. Supp. 2d at 209 (internal marks omitted).  For all the same reasons discussed above, the Press Coalition also satisfies that test.

Dated:  December 21, 2021       Respectfully submitted,

                                    BALLARD SPAHR LLP

                                    /s/ *Charles D. Tobin*
                                    Charles D. Tobin (#455593)
                                    Maxwell S. Mishkin (#1031356)
                                    Lauren Russell (#1697195)
                                    1909 K Street NW, 12th Floor
                                    Washington, DC 20006
                                    Telephone: (202) 661-2200
                                    Fax: (202) 661-2299
                                    tobinc@ballardspahr.com
                                    mishkinm@ballardspahr.com
                                    russelll@ballarspahr.com

                                    *Counsel for the Press Coalition*

12

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of December 2021, I caused true and correct copies

of the foregoing to be served via electronic mail and U.S. Mail on the following:

Mary L. Dohrmann
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
555 Fourth Street, NW
Washington, DC 20530
Mary.Dohrmann@usdoj.gov

*Counsel for the United States*

Christopher Wiest
25 Town Center Blvd., Ste. 104
Crestview Hills, KY 41017
chris@cwiestlaw.com

Christopher Macchiaroli
Silverman, Thompson, Slutkin & White LLC
1750 K Street, NW, Suite 810
Washington, DC 20006
cmacchiaroli@silvermanthompson.com

*Counsel for Defendant Thomas Vinson*

Chastity R. Beyl
Federal Defender
629 S. Fourth St., Ste. 200
Louisville, KY 40202
chastity_beyl@fd.org

*Counsel for Defendant Lori Vinson*

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)