IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IN RE PRESS COALITION'S MOTION FOR ACCESS TO COMMUNITY SERVICE RECORDS | : : : : : : : | No. 1:21-mc-00166 (RBW) |

**THOMAS AND LORI VINSON'S MEMORANDUM IN OPPOSITION TO THE PRESS COALITION'S MOTION FOR ACCESS TO COMMUNITY SERVICE RECORDS**

Defendants, Thomas Vinson and Lori Vinson, by and through their respective undersigned counsel, submits this Memorandum in Opposition to the Press Coalition's Motion for Access to Community Service Records [DE#1].

Introduction

What is, perhaps, the most stunning aspect about the nature and scope of the Press Coalition's Motion for Access to Community Service Records in this case is the timing of it. The Press Coalition does not seek, for instance, access about details of community service *after* the completion of community service, but instead seeks an ongoing meddlesome release (they utilize the term "contemporaneous" and "comprehensive" to describe the breathtaking scope of what they seek) in their quest to obtain details of the completion of probation by the Vinsons. [DE#1 at p2]. Instead, they very much seek to interject themselves in the Probation Office's (and this Court's) supervision of the Vinsons, so that they can presumably second guess either this Court or the Probation Office. And what is equally incredible is that they do not do so with even a hint that there is, or could be, anything untoward with the completion of that aspect of the Vinsons' sentences by them.

1

<u>Background law</u>

Records of compliance with the terms of probations are issues for the U.S. Attorney, the Court, and the probation officer. We know this because 18 U.S. Code § 3603 speaks to a monitoring function between the probation office, the court, and the U.S. Attorney. Those duties include the duties of the probation office to keep informed about those on probation and to "aid" such persons (presumably aiding them with compliance with probation). 18 U.S. Code § 3603(3). And to appropriately make reports to the sentencing court. 18 U.S. Code § 3603(2). The probation officer also must "keep informed concerning the conduct, condition, and compliance with any condition of probation." 18 U.S. Code § 3603(7). And, to "report to the court any failure of a probationer." *Id.* One can search, in vain, for any statutory basis for the release of probation records to third parties.

**A. <u>The records at issue are not judicial records subject to *Hubbard* balancing</u>**

Though Movants give this aspect of their argument short shrift, and an anemic analysis, the first inquiry is whether the probation records at issue are judicial records. Indeed, "not all documents filed with courts are judicial records." *SEC v. Am. Int'l Grp.*, 712 F.3d 1, 3, 404 U.S. App. D.C. 286 (D.C. Cir. 2013). Rather, "whether something is a judicial record depends on 'the role it plays in the adjudicatory process.'" *Id.* In fact, the D.C. Circuit has observed that "though filing a document with the court is not sufficient to render the document a judicial record, it is very much a prerequisite." *Id.* at 4.

"Yet not all documents filed with courts are judicial records." *Id.* "Just as a document would not be a public record when it does not 'eventuate in any official action or decision,'" *id.*,

"whether something is a judicial record depends on 'the role it plays in the adjudicatory process.'" *Id.*, *citing United States v. El-Sayegh*, 131 F.3d 158, 160, 163 (D.C. Cir. 1997).[1]

Here, Movants do not even seek documents filed with the court under seal, as is the case with a presentence report. Instead, they engage in mental gymnastics to turn records that the D.C. Circuit has indicated are not judicial records under *SEC v. Am. Int'l Grp.*, because they have *never* been filed with a court, into judicial records by engaging in a perfunctory analysis devoid of support in any case law. Their argument is: probation officers are appointed by the judiciary, and they are an entity in the judicial branch, therefore, they posit, *anything* a probation officer generates is a judicial record (regardless of whether it is ever transmitted to a judge or filed in the public record), triggering the analysis and weighing under *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980).

Of course, *SEC v. Am. Int'l Grp.* disposes of the Movant's arguments. In that case the press sought the release of confidential compliance reports generated by a consultant who would be engaged under a consent decree between the SEC and American International Group. 712 F.3d 1, 3. A member of the media sought release of these records. *Id.* The consultant filed nothing with the court in terms of compliance, and, at the time of the access request, the reports did not even exist yet. *Id.*

---

[1] *El-Sayegh* is a particularly interesting case. It involved an attempt by media to obtain access to a Saudi national's guilty plea agreement (which apparently had immigration implications), resulting in a withdrawal of that plea, and dismissal of the criminal charges. The D.C. Circuit determined that the withdrawn plea agreement was not a judicial record subject to release. It reasoned that, for a judicial record to be a judicial record, there must be "a judicial decision. If none occurs, documents are just documents; with nothing judicial to record, there are no judicial records." 131 F.3d 158 at 162. The D.C. Circuit observed that release of this information would undermine "the policy in favor of candid plea negotiations." *Id.* at 163. Thus, "what makes a document a judicial record and subjects it to the common law right of access is the role it plays in the adjudicatory process." *Id.*

In support of their request and suggestion that these records are somehow public records, Movants cite *In re Nichter*, 949 F. Supp. 2d 205 (D.C.D. 2013), but *Nichter* is actually unhelpful to them. *Nichter* began with the notion that pre-sentence reports were "presumptively confidential," *id.* at 208, but, because they were documents filed with the court, could be released upon a showing of special need. Here, of course, Movants seek documents which have never been filed with the court, and may never be filed with the court, in a ongoing manner that they describe as "contemporaneous" and "comprehensive." [Motion at 2].

We will address the Movants' request under *Hubbard* below, but they have cited (and cannot cite) a single case that might suggest that probation records that reflect hours and details of community service, that have never been filed with the Court, and might never be filed with the Court, are a judicial record. Probably because the D.C. Circuit has flatly indicated that such a public filing with the court is a "prerequisite" to a finding of a judicial record. *Am. Int'l Grp.*, 712 F.3d 1 at 4.

One final note, which is Movants' misleading citation to *Leopold v. United States*, 964 F.3d 1121, 1128 (D.C. Cir. 2020). One might read Movants' motion to be quoting *Leopold* when they cite reports on the "conduct and condition" of a probationer to have a "significant role to play in the adjudicatory process." Of course, that case says <u>nothing</u> of the sort, and the language "conduct and condition" are simply not contained <u>at all</u> in *Leopold*. Instead, that case dealt with "electronic surveillance orders and related filings in closed investigations," and did not deal <u>at all</u> with post-sentence, internal probation documents. *Id.* at 1123. The need to resort to this sort of deliberate misleading gamesmanship should tell the Court all it needs to know about the merits of Movant's position that these internal probation records are somehow judicial records (which is to say, their position has no merit at all, and is directly contradicted by D.C. Circuit precedent).

Again, unlike *Leopold*, which sought the actual contents of <u>filed</u> court records, the Movants here seek records of the probation department that have not been filed.[2]

B. **Even if the records at issue were judicial records (and they are not), an appropriate *Hubbard* balancing compels withholding these records**

Before we proceed further, it is notable that several out-of-Circuit cases establish that these records should not be released.  *U.S. v. Charmer Industries, Inc.*, 711 F.2d 1164, 1175 (2d Cir. 1983); *U.S. v. F. Joseph Loeper, Jr.*, 132 F. Supp. 2d 337 (E.D. Pa. 2001); *United States v. Harrison*, 2003 U.S. Dist. LEXIS 7733 (EDPA 2003); *United States v. Walker*, 491 F.2d 236 (9th Cir. 1974); *see also United States v. Munir*, 953 F. Supp. 2d 470, 476-77 (E.D.N.Y. 2013) (describing how probation offices confidentially provide information to courts).

Turning to *Hubbard*, Movants are correct that, when it comes to judicial records (which these records are not), a presumption arises to access.  But that presumption is "not absolute," and it "may be outweighed in certain cases by competing interests." *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017).

To assist courts in assessing when the presumption gives way, the D.C. Circuit established a six-factor test in *United States v. Hubbard*, 650 F.2d 293, 208 U.S. App. D.C. 399 (D.C. Cir. 1980). That test—the "Hubbard test"—requires that courts weigh:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

---

[2] While not present here, if the detailed records that Movants sought were: (i) filed in the court record; and (ii) used by the Court for some sort of judgment (i.e. a probation violation, or in support of a request to terminate probation after compliance with all terms and conditions for a period of time), then the case would be different.  Again, that is not the case now, and such a filing, in support of either such motion may never be the case.

*EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409, 321 U.S. App. D.C. 243 (D.C. Cir. 1996).

Movants contend that each prong warrants access. Here, they are wrong on every score.

1. <u>The need for public access to the documents at issue</u>:

Movants incredibly contend that this case, involving a misdemeanor guilty plea, is on par with high profile cases involving public officials. To state their analogy is to refute it. But in actuality, the question is even more specific. The question is whether the movants need "contemporaneous and comprehensive" access [Motion, DE#1 at p.2], to post-sentencing compliance documents. It is difficult to understand how that could possibly be so. The only justification that we can discern for this request is to create a media circus at the location where the Vinsons are performing their community service. That is bolstered by the fact that the Vinsons have had multiple media requests in the last 60 days, both directly, and through Counsel, all of which they have declined to participate in.

This is <u>not</u> a request, for instance, for records of community service <u>after</u> the Vinsons have completed their community service sentence, or even a request for records of community service underlying some alleged violation of probation that might allow the media to dig into such an event. Under Movants rationale, the Bureau of Prisons would be forced to open its doors to the media to broadcast the hour-by-hour replay of every felon sentenced in connection January 6, 2021, as they served their sentence for 24/7 television production. It might make for salacious television, but it hardly gives rise to a public need for the release of the information.

Movants argue that *In re Nichter*, 949 F. Supp. 2d 205, somehow supports their public interest. But *Nichter* and the PSR release at issue within it, came after the sentences were fully served. Indeed, *Nichter* involved a discussion about PSR's being generally <u>not released</u> to the public. *Id.* at 208-209. This case is not about the details of a fully served sentence. At least not in

6

its present posture.  It is instead about the release of internal probation department details of an ongoing probation community service.

This is a request by the media for the intimate details of how, with whom, and where the Vinsons are presently completing that aspect of their sentence.  Acceding to this unprecedented (one might even suggest egregious) request will turn what should be a penitent and solemn serving out of community service by the Vinsons, in relative privacy, into a media circus when the cameras show up to record the Vinsons performing their community service.  Of note, it will not only affect the Vinsons.  It also threatens third parties, most of whom have no desire for intense media exposure.  The local homeless shelter, or the local Habitat for Humanity site, do not want the media circus, do not want their address shared with national news, and do not want the inevitable harassment that will befall them, when certain members of the public do not like their perceived association with the Vinsons, for merely being willing to let the Vinsons perform community service at their location.  What benefit these details have to the public, it is hard, if not impossible, to discern.

And, of note, this request also potentially threatens the ability of the Vinsons to complete their sentences.  Many non-profit, community service organizations, are open to permitting those convicted of an offense to complete community service.  That willingness drops significantly when a media circus ensues.

Indeed, the case cited by the Movants, *Nichter*, was clear that redaction was necessary to "protect the personal privacy of living individuals." *Id.* at 210.  Here, everything the Movants want is subject to that same redaction.

The need for public access to ongoing, in process, community service records, prior to completion or a violation, is non-existent.

2. The extent of previous public access to documents:

Movants contend that the second *Hubbard* factor is neutral where there has been no previous public access, *citing Vanda Pharm v. FDA*, --- F.Supp.3d ---, 2021 U.S. Dist. LEXIS 86682 (D.D.C. May 6, 2021). However, D.C. Circuit case law suggests that when it comes to documents that have never been released to the public and are never likely to be released to the public, the second factor militates against disclosure. *CNN, Inc. v. FBI*, 984 F.3d 114, 119 (D.C. Cir. 2021). *See, also, United States v. Murray*, 2018 U.S. Dist. LEXIS 101022 (DDC 2018) (suggesting that where documents are not public and may never be made public, the second factor weighed against disclosure). This factor weighs against disclosure.

3. The existence and identity of an objector

Movants contend that where a Defendant is the only objector, that release is appropriate. The Vinsons both object, both as to their own records and the release of their spouse's records. Assuming the Government also objects, the third factor will strongly weigh against release. *Murray*, 2018 U.S. Dist. LEXIS 101022. But the problem with the analysis under this prong stems from the nature of what the Movants seek.

Movants do not seek access to a particular record in existence, but rather an open-ended *carte blanche* into all of the records of the Vinsons' community service. How is a community service organization to know that it must object, when the community service by the Vinsons hasn't been served yet at their location yet? And, further, such a party raising an objection defeats the very purpose behind why such a party would want to object: keeping the media circus from descending upon its operations. *FBI*, 984 F.3d 114, 120 (observing third party objectors who filed such objections would potentially out themselves, warranting against disclosure).

This factor weighs against disclosure.

4.        The strength of any asserted privacy or property rights

Movants engage in a self-serving analysis that the release of the information they seek will not constitute an unconscionable invasion of privacy, *citing United States v. Munchel*, 2021 U.S. Dist. LEXIS 194604 (DCD 2021). They are wrong. The locations and the names, of where the Vinsons are serving their community service are likely to result in an unconscionable invasion of privacy. Again, this isn't about Mr. or Mrs. Vinson, or their families or backgrounds, as Movants suggest. It is about the Movants seeking to invade an ongoing serve-out of a community service sentence. It is not even about seeking a running total of hours they have performed relative to their sentence (which is perhaps the least objectionable). Again, what Movants want is "contemporaneous" and "comprehensive" access to the Vinsons' community service records.

Those organizations and individuals where the Vinsons are performing their community service have a right to privacy. In fact, as it turns out, in the current posture, they do not even know that the Movants seek to trample on their rights, with a cursory and woefully inadequate argument of "well the Vinsons information is already out there to some degree, so the Court should release the third party information of the location and name of where they are doing their community service so that we can have our clients descend on them like vultures to photograph, video, and harass the Vinsons and the operators of those locations." What is even worse, in some ways, is that if the Vinsons are serving the impoverished and homeless, the privacy rights of these individuals also gets violated as part of the media spectacle the Defendants seek to cause with the release of these records.

In partial response, the Movants say: "well, redact the records." But it does not take a great deal of clairvoyance to discern that Movants will then raise objections with that very redacting of the names and locations of where the Vinsons are performing their community service.

This isn't release of video of people in public places, as was the case in *Munchel*, but instead involves wholly separate interests.

5.      The possibility of prejudice

Movants claim that there is no prejudice from their request. Their mere assertion is easily rebutted. Again, a media circus at the location where the Vinsons are performing community service will certainly dissuade any non-profit organization from permitting the Vinsons to serve the Court's sentence at that location. Is causing the Vinsons to be unable to serve the Court's sentence prejudice? To ask the question is to answer it.

Beyond that, as we have explained, there is also serious prejudice to third parties.

At the end of the day, if the Vinsons should fail to comply with the Court's sentence, then the probation officer will file a report, and the media will then have the fact of their compliance, or lack thereof, placed in the public record, for them to report on. But, again, that is not what the Movants seek. They seek "contemporaneous" and "comprehensive" access to the Vinsons' community service records. And that means interfering with the performance of the probation officers duties as well.

Does that mean every email that the Vinsons send to the probation officer about their community service is subject to release? What about every email that the probation officer sends to his supervisors in terms of approvals of a particular community service location? Every draft probation officer report?

Again, it is important to note what we are not talking about: and that is a particular court filing that Movants are seeking access to. Which the Court could assess *in camera* and determine to release or not release (or redact and release in part). And, in the absence of that, Movants, in

10

reality, seek an unprecedented, ongoing, roving *in camera* review by this Court for each and every record created as and when it is created.

That happens to cause prejudice to the normal operation of both the probation office, and the Court. At a time when judicial resources are already stretched thin.

6. <u>The purpose of the records at issue</u>

Movants engage in a perfunctory analysis of this factor. This Court does not typically receive the detail that Movants seek ("contemporaneous" and "comprehensive" community service records). It instead receives a report about whether the Vinsons are in compliance with the terms of their probation, whether they have completed their probation, and, if the Vinsons violate probation, a report reflecting the violation.

We do not even deal here with records that are actually submitted to the Court. We instead deal with records that have not been created and will, in most instances, never be submitted to the Court. In fact, "when the sixth factor highlights the fact that a sealed document didn't affect a judicial decision, it can be the 'most important' element cutting against disclosure — by making a multi-factored analysis more straightforward than usual." *FBI*, 984 F.3d 114, 120.

The sixth factor weighs against disclosure.

In short, even if *Hubbard* applied and we were dealing with judicial records (and we are not), the factors cut against disclosure.

## Conclusion

For all these reasons, the request for access should be denied.

Dated: December 28, 2021                                        Respectfully submitted,


/s/ Christopher Wiest                                           /s/Chastity R. Beyl
Christopher Wiest (DCD KY 002)                                  Chastity Beyl (Admitted PHV)
25 Town Center Blvd, Ste. 104                                   Federal Defender
Crestview Hills, Kentucky 41017                                 629 South 4th Street, Suite 200
Telephone: (513) 257-1895                                       Louisville, Kentucky 40202
Facsimile: (859) 495-0803                                       Telephone: (502) 584-0525
Email: chris@cwiestlaw.com                                      Email: Chastity_Beyl@fd.org
                                                                *Counsel for Defendant Lori Vinson*

s/ Christopher Macchiaroli
Christopher Macchiaroli (D.C. Bar No. 491825)
Silverman, Thompson, Slutkin & White LLC
1750 K Street, NW, Suite 810
Washington, D.C. 20006
Telephone: (202) 539-2444
Facsimile: (410) 547-2432
Email: cmacchiaroli@silvermanthompson.com
*Counsel for Defendant Thomas Vinson*

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing upon Counsel for Movants, and the United States, by both electronic mail, and by filing same via the Court's CM/ECF service, this 28 day of December, 2021.


                                                                /s/ Christopher Wiest