UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IN RE PRESS COALITION'S MOTION FOR ACCESS TO COMMUNITY SERVICE RECORDS | ) ) ) ) ) ) ) ) ) | Misc. Action No. 21-166 (RBW) |

# ORDER

On December 21, 2022, Cable News Network, Inc.; American Broadcasting Companies, Inc. d/b/a ABC News; The Associated Press; CBS Broadcasting Inc. o/b/o CBS News; Dow Jones & Company, Inc., publisher of The Wall Street Journal; The E.W. Scripps Company; Gannett Co., Inc.; Gray Media Group, Inc.; Los Angeles Times Communications LLC, publisher of The Los Angeles Times; National Public Radio, Inc.; NBCUniversal Media, LLC d/b/a NBC News; The New York Times Company; Pro Publica, Inc.; Tegna, Inc.; and WP Company LLC, d/b/a The Washington Post (collectively, the "Press Coalition") filed a motion for access to certain records relating to criminal defendants Lori and Thomas Vinson (the "defendants"), who were sentenced by this Court in United States v. Thomas and Lori Vinson, Crim. Action No. 21-355 ("Vinson"). See generally Motion for Access to Community Service Records ("Press Coal.'s Mot."), ECF No. 1. Specifically, the Press Coalition's motion "seeks the release of records reflecting how [the d]efendants have completed the 120 hours of community service that the Court ordered them each to perform as a condition of their probation[.]" Id. at 1. The defendants oppose this request.[1] See generally Thomas and Lori Vinson's Memorandum in

---

[1] The government has not indicated its position in this matter, although it explicitly took no position in a nearly identical case recently decided by another member of this Court. See In re Press Coal.'s Motion for Access to Cmty. Serv. Recs., Misc. Case No. 21-155 (RCL), 2022 WL 227090, at *1 (D.D.C. Jan. 26, 2022).

Opposition to the Press Coalition's Motion for Access to Community Service Records ("Defs.' Mem"), ECF No. 3.  Upon careful consideration of the parties' submissions,² the Court concludes for the following reasons that it must deny the Press Coalition's motion.

### I.     BACKGROUND

On May 12, 2021, the defendants were each charged by Information with one count of entering and remaining in a restricted building, in violation of 18 U.S.C. § 1752(a)(1); one count of disorderly and disruptive conduct in a restricted building, in violation of 18 U.S.C. § 1752(a)(2); one count of violent entry and disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D); and one count of parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G).  See generally Information, United States v. Thomas and Lori Vinson, Crim. Action No. 21-355, ECF No. 16.  These charges were filed in response to the defendants' participation in the well-publicized events that occurred at the United States Capitol building on January 6, 2021.³  See id.  On July 27, 2021, the

---

² In addition to the filing already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum of Points and Authorities in Support of the Press Coalition's Motion for Access to Community Service Records ("Press Coal.'s Mem."), ECF No. 1; (2) the Reply Memorandum in Further Support of the Press Coalition's Motion for Access to Community Service Records ("Press Coalition's Reply"), ECF No. 4; and (3) the defendants' Notice of Supplemental Authority ("Defs.' Not.").

³ As another member of this Court explained:

> Pursuant to the Constitution and federal law, Congress convened in a joint session on 1:00 pm on January 6, 2021, to count the votes of the Electoral College and certify the results of the 2020 Presidential Election, which had taken place on November 3, 2020.  With then-Vice President Michael R. Pence presiding, proceedings began and continued until 1:30 PM, when the United States House of Representatives and the United States Senate adjourned to separate chambers within the Capitol to debate and consider an objection to the Electoral College vote from the State of Arizona.  Vice President Pence continued to preside in the Senate chamber.
>
> Shortly before noon, then-President Donald J. Trump took the stage at a rally of his supporters staged just south of the White House.  Then-President Trump declared that the election was "rigged" and "stolen," and urged the crowd to "demand that Congress do the right thing and only count the electors who have been lawfully slated."  During and after then-President Trump's speech, a mass of attendees marched on the Capitol.

(continued . . .)

defendants each pleaded guilty, pursuant to a plea agreement, to count four of the Information: parading, demonstrating, or picketing in a Capitol building.  See Minute Entry (July 27, 2021), Vinson; Plea Agreement, Vinson, ECF No. 28; Plea Agreement, Vinson, ECF No. 29.

On October 22, 2021, the defendants appeared before the Court for sentencing.  See Minute Entry (Oct. 22, 2021), Vinson.  The Court sentenced both defendants to probation for sixty months and ordered the defendants to each pay $500 in restitution and a $5000 fine.  See Judgment at 2–5, Vinson, ECF No. 55; Judgment at 2–5, Vinson, ECF No. 57.  As a condition of their probation, the Court ordered the defendants, inter alia, to "complete 120 hours of community service within 36 months[]" under the supervision and approval of the United States Probation Office (the "Probation Office").[4]  Judgment at 4, Vinson, ECF No. 55; Judgment at 4, Vinson, ECF No. 57.

As noted above, on December 21, 2021, the Press Coalition filed the motion that is the subject of this Order.  See Press Coal.'s Mot.  On December 28, 2021, the defendants filed their opposition.  See Defs.' Mem.  On January 4, 2022, the Press Coalition filed its reply in support of its motion.  See Press Coal.'s Reply.  And, on January 29, 2022, the defendants filed a Notice

---

(. . . continued)
    As they gathered outside the Capitol, the crowd faced temporary and permanent barricades and Capitol Police positioned to prevent unauthorized entry to the Capitol.  Shortly after 2:00 p m., crowd members forced entry into the Capitol building, including by breaking windows and assaulting Capitol Police officers, while others in the crowd encouraged and assisted those acts.  These violent acts caused members of the Senate and House of Representatives to evacuate the chambers of the Capitol and suspend the certification process of the presidential election results.  The violent riot desecrated the Capitol, blood was shed, and several individuals lost their lives.  All told, the events of January 6, 2021 marked the most significant assault on the Capitol since the War of 1812.

United States v. Grider, Crim. Action No. 21-22 (CKK), 2022 WL 392307, at *2 (D.D.C. Feb. 9, 2022) (cleaned up).

[4] Additionally, the Court "[did] not authorize transfer of jurisdiction to the United States District Court for the Western District of Kentucky but [did] authorize the transfer of supervision to the Western District of Kentucky if accepted."  Judgment at 4, Vinson, ECF No. 55; Judgment at 4, Vinson, ECF No. 57.

3

of Supplemental Authority, which consisted of an opinion issued by another member of this Court, Judge Royce Lamberth, In re Press Coalition's Motion for Access to Community Service Records ("Morgan-Lloyd"), Misc. Action No. 21-155 (RCL), 2022 WL 227090 (D.D.C. Jan. 26, 2022). See Defs.' Not. On May 13, 2022, the Court ordered the United States Probation Office to "submit to the Court for its in camera review copies of the defendants' community service records requested by the Press Coalition in its [m]otion[.]" Order (May 13, 2022) at 1, ECF No. 7. The Probation Office then submitted these records to the Court's chambers on May 19, 2022, and they have been reviewed by the Court.

## II.　ANALYSIS

The Press Coalition, pursuant to Local Criminal Rule 57.6, argues that it is entitled under the common law right of access to "records reflecting how [the d]efendants have completed the 120 hours of community service that the Court ordered them each to perform as a condition of their probation." Press Coal.'s Mot. at 1. In response, the defendants argue (1) that "[t]he records at issue are not judicial records" for which there may be an entitlement to public access, Defs.' Opp'n at 2, and (2) "[e]ven if the records at issue were judicial records[,]" application of the six-factor test in United States v. Hubbard, 650 F.2d 293, 208 U.S. App. D.C. 399 (D.C. Cir. 1980), "compels withholding these records[,]" id. at 5.

"In 'the courts of this country'—including the federal courts—the common law bestows upon the public a right of access to public records and documents[,]" Wash. Legal Found. v. U.S. Sent'g Comm'n, 89 F.3d 897, 902 (D.C. Cir. 1996) (quoting Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978)), and "[t]he common-law right of public access to judicial records 'is a fundamental element of the rule of law, important to maintaining the integrity and legitimacy of an independent [j]udicial [b]ranch[,]'" In re Leopold to Unseal Certain Elec. Surveillance

4

Applications & Orders, 964 F.3d 1121, 1127 (D.C. Cir. 2020) (quoting MetLife, Inc. v. Fin. Stability Oversight Council, 865 F.3d 661, 663 (D.C. Cir. 2017)).

In analyzing whether the right applies to a particular request, the "Court[] must first establish whether the subject of an application is a 'judicial record[.]'" In re Application for Access to Video Exhibits, Misc. Action No. 21-90 (RC), 2021 WL 5769379, at *3 (D.D.C. Dec. 6, 2021). "And in [the District of Columbia] Circuit, 'not all documents filed with courts are judicial records.'" In re Fort Totten Metrorail Cases, 960 F. Supp. 2d 2, 6 (D.D.C. 2013) (Walton, J.) (quoting Secs. & Exch. Comm'n v. Am. Int'l Grp., 712 F.3d 1, 3 (D.C. Cir. 2013)). But "[t]here is a 'strong presumption in favor of public access' when a document is a judicial record." In re Application for Access to Video Exhibits, 2021 WL 5769379, at *3 (quoting In re Leopold, 964 F.3d at 1127).

However, "this presumption 'may be outweighed by competing interests.'" In re Application for Access to Certain Sealed Video Exhibits, 546 F. Supp. 3d 1, 4 (D.D.C. 2021) (quoting Metlife, Inc. v. Fin. Stability Oversight Council, 865 F.3d 661, 665 (D.C. Cir. 2017)). In United States v. Hubbard, 650 F.2d 293 (D.C. Cir. 1980), the Circuit "identified six factors that might act to overcome this presumption":

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

Equal Emp. Opportunity Comm'n v. Nat'l Child.'s Ctr., Inc., 98 F.3d 1406, 1409 (D.C. Cir.1996) (citing Hubbard, 650 F.2d at 315).

Here, the Press Coalition argues that "records reflecting how [the d]efendants have completed [their] . . . community service[,]" Press Coal.'s Mot. at 1, "are judicial records that

5

have a role to play in judicial decision-making[,]" Press Coal.'s Mem. at 5.  According to the Press Coalition, the Probation Office is "an 'entity in the judicial branch[,]'" id. at 6 (quoting Wash. Legal Found. v. U.S. Sent'g Comm'n, 17 F.3d 1446, 1449 (D.C. Cir. 1994)), and thus the Probation Office's reports advising the Court on the progress "of a probationer are, like [Presentence Investigation Reports], judicial records that aid th[e] Court in 'carrying out its function[,]'" id. at 7 (quoting In re Nichter, 949 F. Supp. 2d 205, 208 (D.D.C. 2013)).

As noted by the defendants in their Notice of Supplemental Authority, another member of this Court, Judge Royce Lamberth, recently considered whether records of a January 6, 2021 Capitol riot defendant's court-ordered community service requirement were judicial records when evaluating an identical request in Morgan-Lloyd.  In that case, the Press Coalition argued that defendant Anna Morgan-Lloyd's community service records were "judicial records because they 'influence how courts discharge their responsibility to oversee probation' and 'thus play an indispensable role in the adjudicatory process.'" Morgan-Lloyd, 2022 WL 227090, at *3.  Judge Lamberth, having reviewed the requested records in camera, see id., was unpersuaded, concluding that the "community service records [ ] played no role in the adjudicatory process." Id. (emphasis in original).

Here, based on its in camera review of the requested community service records, the Court agrees with Judge Lamberth that the defendants' community service records are not at this time judicial records subject to the common law right of access.  As in the case before Judge Lamberth, the Press Coalition argues here that the community service records: (1) "are created under a statutory framework that expressly establishes the Probation Service as an 'entity in the judicial branch[;]'" Press Coal.'s Reply at 2, (2) "go to the heart of judicial authority, [as they] are created by court-appointed probation officers within the judicial branch, and inform judicial

decisions as to the status and compliance of probationers[;]" id. at 3, and (3) "must be reported to the court" if so ordered, id. However, the Court agrees with Judge Lamberth's assessment in response to these arguments to the extent that, while

> [t]he Press Coalition emphasizes the Probation Office's role as an "entity in the judicial branch[,]" . . . that is not enough to transform these documents into judicial records. . . . At most, [the defendants'] community service records are "preliminary materials" on which a probation officer might rely or "writings incidental to [a] decision itself"—a decision more likely to be memorialized and reflected by the recommendation and report that the office might submit to the Court.

Morgan-Lloyd, 2022 WL 227090, at *3 (citations omitted). Thus, "[t]hese records might carry the potential to 'inform and influence' the Court's decision-making because probation officers 'must report the information to the court[,]'" id., but they do not play a direct role in the adjudicatory process and are more accurately categorized as "'preliminary materials' on which a probation officer might rely[,]" id., in making representations to the Court regarding a defendant under supervision. However, no such submission has been made to the Court by the defendants' probation officer.[5]

Therefore, because the defendants' community service records are not judicial records, the Court cannot conclude that the records are subject to production based on the Press Coalition's assertion of the common law right of access.[6] See Am. Int'l Grp., 712 F.3d at 3–4

---

[5] Additionally, although not dispositive of the determination regarding whether the community service records are judicial records, it is true in this case that the Court "has not made any decision about these records—for example whether [the defendants] ha[ve] satisfied the [ ] conditions imposed at sentencing[,]" or "relied on them for any other purpose," given that "they were never filed with the Court until the Court requested them for review in camera[,]" Morgan-Lloyd, Misc. Action No. 21-155 (RCL), 2022 WL 227090, at *3 (D.D.C. Jan. 26, 2022), in response to the Press Coalition's request for the records.

[6] Having concluded that the defendants' community service records are not judicial records, the Court need not consider the application of the six Hubbard factors. See Morgan-Lloyd, 2022 WL 227090, at *4 ("The Court need not apply the balancing factors test set forth by the D.C. Circuit in United States v. Hubbard[.]" (citing Am. Int'l Grp., 712 F.3d at 3, 5)).

(determining that reports prepared by an independent consultant documenting findings and conclusions were "not judicial records" and, therefore, not "subject to the right of access").

Accordingly, it is hereby

**ORDERED** that the Press Coalition's Motion for Access to Community Service Records, ECF No. 1, is **DENIED**. It is further

**ORDERED** that this case is **CLOSED**.

**SO ORDERED** this 27th day of June, 2022.

REGGIE B. WALTON  
United States District Judge
